UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

|  |  |  |
|---|---|---|
| **DELIA RODRIGUEZ**, *on behalf of herself and those similarly situated* | : : : : : : | Civ. No. 18-16251 (KM) (JBC) |
| **Plaintiff,** | : : : | **OPINION** |
| **v.** | : : : | |
| **GEM RECOVERY SYSTEMS, LLC, AWAR HOLDINGS, INC., SAM A. AWAR; and JOHN DOES 1 to 10,** | : : : : : | |
| **Defendants.** | : : : | |

---

**MCNULTY, U.S.D.J.,**

This case involves a class action complaint brought pursuant to the Fair Debt Collection Practices Act ("FDCPA"). Plaintiff Delia Rodriguez alleged that defendants Gem Recovery Systems, LLC, Awar Holdings, Inc., and Sam A. Awar violated a number of FDCPA provisions in a letter they sent plaintiff seeking to collect debt owed to the Monmouth Ocean Hospital Services Corp. (allegedly also known as "MONOC"). Plaintiff now seeks to file a Third Amended Complaint which would remove Gem Recovery Systems as a defendant and add additional factual allegations. Defendants moved to dismiss plaintiff's Second Amended Complaint and now oppose amendment on the ground that it would be futile. I will **GRANT** the motion to amend and **DENY** defendants' motion to dismiss insofar as it still applies to the complaint in its Third Amended form.

## I.     Background

Plaintiff filed her complaint on November 16, 2018, initially bringing claims against Gem Recovery Systems, Inc. and Frank Giglio. (DE 1.) She filed an amended complaint on January 21, 2019. (DE 7.) On March 6, 2020, she moved to amend again, this time to remove Frank Giglio and to add Sam A.

Awar and Awar Holdings, Inc. (DE 26-2.) It appears that Awar Holding was the legal name of the entity which issued the debt collection letters, but Awar Holdings had been doing business as Gem Recovery Systems, Inc. (*Id.*) Judge Clark granted plaintiff's motion to amend and the Second Amended Complaint was filed on November 12, 2020. (DE 39; DE 41.) The Second Amended Complaint alleges the following FDCPA violations:

    a. False, deceptive, and misleading representations and means in connection with the collection of alleged debts, 15 U.S.C. Section 1692e;

    b. Falsely representing the character, amount, or legal status of the alleged debts, in violation of 15 US.C. Section 1692e(2)(A);

    c. False representations and deceptive means to collect or attempt to collect the alleged debts, in violation of 15 U.S.C. Section 1692e(10);

    d. Unfair or unconscionable means to collect or attempt to collect the alleged debts in violation of 15 U.S.C. Section 1692f;

    e. Failure to state the name of the creditor to whom the debt is owed in violation of 15 U.S.C. 1692g and 1692g(a)(2);

    f. Failure to give proper notice of consumer's rights by overshadowing the Validation Notice in violation of 15 U.S.C. 1692g and 1692g(b).

(DE 41 at 10-11.) The bases for these claims are (1) that a validation notice in the letter was improperly overshadowed by threats from the defendants that they would report debtor's non-payment to credit reporting agencies, (2) the debt collection letters issued by the defendants did not properly identify the creditor seeking to collect the debt, and (3) the letter falsely represented that Gem Recovery Systems had already reported the delinquent account to credit agencies.

     Sam A. Awar and Awar Holdings then filed the motion to dismiss at issue in this case. (DE 54.) In addition to filing that motion, they sent a Rule 11 safe-harbor letter to plaintiff's counsel. (DE 65 at 6.) The Rule 11 safe-harbor letter explained that plaintiff had redacted the name of the creditor from the letters

submitted as exhibits to the court. (*Id.*) Plaintiff's redactions thus obscured a fact necessary for the court to evaluate her claims, and, according to defendants, were intentional efforts to obscure the fact that her claims were meritless. (*Id.*) As defendants note, the debt collection notices did bear a name, "MONOC," which defendants assert is the trade name of the plaintiff's creditor. (*Id.*)

Plaintiff responded to the Rule 11 safe-harbor letter by filing the motion to amend at issue in this case. (DE 63.) Her proposed third amended complaint now attaches the debt collection letters without the name of the creditor redacted. She still, however, asserts that the creditor's name is not displayed on the letter because the name "MONOC" does not adequately identify the creditor under 15 U.S.C. 1692g and 1692g(a)(2). (*Id.*) The new complaint also removes Gem Recovery Systems, which plaintiff now believes to be simply an alternative name for Awar Holdings, Inc, and added a few additional substantive allegations regarding the letters the debt collector sent to consumers. (*See* DE 63-10.) It also adds Accounts Receivable Management Corp. as an alternative name of Awar Holdings, Inc. (*Id.*)

## II.    LEGAL STANDARD

### A. Motion to Amend Under Rules 15 and 16

Generally, a party moves to amend its pleadings under Rule 15, which allows amendment either as a matter of right within a certain time limit or thereafter "with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). "[L]eave [to amend] shall be freely given when justice so requires." *Id.* Accordingly, the courts "have shown a strong liberality ... in allowing amendments under Rule 15(a)." *Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing*, 663 F.2d 419, 425 (3d Cir.1981) (quoting 3 J. Moore, Moore's Federal Practice ¶ 15.08(2) (2d ed. 1989)).

In this case, however, Judge Clark set a deadline by which the parties may amend their pleadings. That deadline was in March 2020. (DE 24.) This case thus implicates Rule 16. "Where the Court's established deadline to

amend pleadings passes, a party seeking to amend after that date must first satisfy the good cause standard of Fed. R. Civ. P. 16(b)(4)." *Wise v. Hickman*, 2020 WL 6375788 at *4 (D.N.J. Oct. 30, 2020). "If good cause is found, only then do courts then evaluate the proposed amendment under Rule 15(a)." *Smart Pharmacy, Inc. v. Medco Health Sols., Inc.*, 2014 WL 3735344 at *1 (D.N.J. July 29, 2014). Ordinarily, the good cause standard focuses on why the motion for leave to amend was not filed prior to the scheduled deadline. "Where a party has the knowledge or facts but fails to move and provides no satisfactory explanation, the court has discretion to deny the late amendment." *Id.* at 2.

Assuming good cause is shown, the court then returns to the considerations set out in Rule 15. *Id.* In *Foman v. Davis*, 371 U.S. 178, 83 S. Ct. 227 (1962), the Supreme Court put its stamp on a liberal amendment policy, while identifying a number of factors relevant to a motion to amend under Rule 15(a). In determining a motion for leave to amend, Courts consider the following factors: (1) undue delay on the part of the party seeking to amend; (2) bad faith or dilatory motive behind the amendment; (3) repeated failure to cure deficiencies through multiple prior amendments; (4) undue prejudice on the opposing party; and/or (5) futility of the amendment. *See Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (quoting *Foman*, 371 U.S. at 182).

"Futility" means that the complaint, as amended, "would not withstand a motion to dismiss." *Massarsky v. Gen. Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983); *see also Brown v. Philip Morris Inc.*, 250 F.3d 789, 796 (3d Cir. 2001); *Adams v. Gould Inc.*, 739 F.2d 858, 864 (3d Cir. 1984). Otherwise, "prejudice to the non-moving party is the touchstone for the denial of an amendment." *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (internal quotation and citation omitted). Thus "delay," for example, entails more than the mere passage of time; to warrant denial of leave to amend, it must be "undue" or prejudicial. *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267,

273 (3d Cir. 2001). The Court should deny leave only when the *Foman* factors "suggest that amendment would be 'unjust'. . . ." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 203 (3d Cir. 2006).

### B. Motion to Dismiss

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief." (citation omitted)). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013).

That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

When deciding a motion to dismiss, a court typically does not consider matters outside the pleadings. However, a court may consider documents that are "integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document[.]" *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) (emphasis and citations omitted); *see In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

## III.   DISCUSSION

### A. Motion to Amend

I find good cause for amendment because it was an appropriate response to the defendants having sent plaintiff a Rule 11 safe harbor notice. The purpose of the safe harbor notice is to "encourage a withdrawal of [an] offending pleading" so as to facilitate litigation on the merits rather than bog the Court down in Rule 11 motions. Plaintiff's compliance with the notice should be encouraged; it would not contribute to the orderly disposition of civil cases to deny leave to amend and thereby force parties to stand on pleadings which they know violate Rule 11.[1]

Having found good cause, I turn to Rule 15. I am directed to grant a motion to amend under that Rule where "justice so requires." Fed. R. Civ. P. 15. It is true that we are not in the early stages; this is plaintiff's Third Amended Complaint and the case has proceeded to discovery. Nevertheless, amendments are to be freely granted, *Foman*, 371 U.S. at 182; the amendment adds no new claims but will add clarity to the existing ones; and it does not appear that defendant will be prejudiced.

Defendants argue that nevertheless, amendment should be denied as "futile," because the complaint, even as amended, fails to state a claim. *Massarsky*, 706 F.2d at 125. I disagree, and so will grant the motion to amend.

---

[1] Nor does this bear any earmarks of a sham reengineering, *i.e.,* a contradiction of prior factual allegations to get around a dispositive motion. *See Smith v. Simmons*, 2009 U.S. Dist. LEXIS 51998 at *13 (E.D. Cal. June 19, 2009).

6

**B. Would Amendment be Futile?**

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(a). To effectuate that purpose, the Act allows for a private cause of action by debtors against debt collectors. See 15 U.S.C. § 1692k. "When such a suit is filed, courts within this Circuit evaluate collection letters and notices for compliance with the Act 'from the perspective of the least sophisticated debtor.'" *Smith v. Lyons, Doughty & Veldhuis, P.C.*, No. CIV.A. 07-5139, 2008 U.S. Dist. LEXIS 56725, 2008 WL 2885887 at *3 (D.N.J. July 23, 2008) (quoting *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir. 2000) (internal quotation and citation omitted)). The Third Circuit has explained how this standard is applied:

> The basic purpose of the least-sophisticated debtor standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd. . . . [T]he least sophisticated debtor standard is lower than simply examining whether particular language would deceive or mislead a reasonable debtor. In other words, this standard is less demanding than one that inquires whether a particular communication would mislead or deceive a reasonable debtor. Nevertheless, the standard does not go so far as to provide solace to the willfully blind or non-observant. The debtor is still held to a quotient of reasonableness, a basic level of understanding, and a willingness to read with care, and the debt collector accordingly cannot be held liable for bizarre or idiosyncratic interpretations. For example, even the least sophisticated debtor is expected to read any notice in its entirety.

*Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 149 (3d Cir. 2013) (internal quotations and citations omitted).

A Rule 12(b)(6) motion may be a suitable vehicle for a court to decide whether the least sophisticated debtor would be deceived or misled by the debt collector's communications. *See id.* at 147 ("whether language in a collection letter contradicts or overshadows the validation notice is a question of law."); *Wilson*, 225 F.3d at 353 n.2 ("The majority of courts to have considered this question have . . . held that this determination involves a question of law."); *Lyons*, 2008 U.S. Dist. LEXIS 56725, 2008 WL 2885887 at *3 ("whether the

7

least sophisticated debtor would be misled by a particular communication is a question of law that may be resolved in a Rule 12(b)(6) motion."). What is required in many cases is simply that the Court read an admittedly authentic letter through the eyes of a hypothetical unsophisticated debtor.

In order for plaintiff to prevail on her FDCPA claim, she must prove the following four elements:

(1) That she is a consumer;
(2) That the defendant is a debt collector;
(3) That the defendant's challenged practice involves an attempt to collect a debt under the FDCPA; and
(4) The defendant has violated the FDCPA in the course of attempting to collect on the debt.

*Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014). For the purposes of this motion, the parties dispute only the fourth element.

As noted above, plaintiff claims that the letter violates the FDCPA because it (1) contains threatening language which overshadows a required disclosure stating that the plaintiff can dispute the debt (the "validation notice"); (2) fails to adequately identify the creditor in the debt collection notice; and (3) is unfair, unconscionable, false, misleading, and deceptive.

**1. The Letter**

Plaintiff alleges that the debt collector issued her six letters in connection with her debt. Only one of the letters, however, is of importance to this motion. It reads substantially as follows:

### GEM RECOVERY SYSTEMS

|  |  |
|---|---|
|  | Date: 11/16/2017 |
| [barcode] | Gem Account No: [redacted]784-1 |
| Deilia Rodriguez | Client: MONOC |
| [Redacted] | Client Reference No: [redacted]1492 |
| [Barcode] | Date of Service: 6/30/2016 |
|  | Balance Due: $1,089.00 |

Dear Deilia Rodriguez

**COLLECTION NOTICE**

Your account has been turned over to us from the above mentioned client for collection. Since your account is delinquent, we will use any collection activity to collect this debt due to our client. Our policy is to report delinquent account information to Trans Union and Experian Credit Bureaus which may impair your credit rating and your ability to obtain credit in the future.

The records of the creditor show that the debt is immediately due or past due. Full payment will avoid further collection activities on this account.

For your convenience, please detach the bottom portion of this letter and return it in the enclosed envelope to avoid further collection activity. To contact us, call 201-722-8780.

**GEM RECOVERY IS A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

The remainder of the letter is the portion commonly known as the "validation notice":

Unless you notify us within thirty days after you receive this notice that you dispute the validity of the debt, or any portion thereof, we will assume the debt to be valid. If you notify us in writing within the thirty day period that the debt, or any portion thereof, is disputed, we will obtain verification of the debt or a copy of the judgment against you and will mail you a copy of such verification or judgement. If you make a written request of us within the thirty day period, we will provide you with the name and address of the original creditor, if different from the current creditor.

**2. "Overshadowing"**

Plaintiff claims that the guarantees of the validation notice are overshadowed by other portions of the letter—particularly the threat in the initial paragraph to initiate collection activities and report the delinquent account to credit agencies. I agree.

Under 15 U.S.C. § 1692g(a)(4), a debt collection notice must disclose that the consumer has the right to dispute the debt within 30 days of receiving the notice. Under 15 U.S.C. § 1692g(b), collection activities and communications

during the 30-day period cannot overshadow or be inconsistent with the consumer's right to dispute the debt or request the name and address of the original creditor. Plaintiff claims that the letter's reference to reporting the delinquent debt would have made an unsophisticated consumer believe that she had to pay the full amount immediately, or her debt would be reported right away, creating a black mark on her credit history.

"A validation notice 'is overshadowed or contradictory if it would make the least sophisticated debtor uncertain as to her rights.'" *Wilson v. Quadramed*, 225 F.3d 350, 354 (3d Cir. 2000) (quoting *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996)). Courts consider both the "form" and "substance" of a letter, *Caprio v. Healthcare Revenue Recovery Grp.*, 709 F.3d 142, 150 (3d Cir. 2013), considering the "the physical characteristics and form of the letter," as well as the existence of any "actual or apparent contradiction" between the terms contained therein. *Quadramed*, 225 F.3d at 356.

In considering the "form" of the letter, courts ask whether the allegedly overshadowing language was presented in different font, size, or color type-face, and consider whether the validation notice appeared on the front page of the debt collection letter alongside the alleged overshadowing language. *Id.* That is not the case here, as the validation notice appears on the same page as the rest of the letter and is the same size, font, and color as the language which is claimed to have overshadowed it.

As for the "substance" of the letter, courts consider whether the overshadowing language creates an actual or apparent contradiction in the letter's terms, or whether the language is, to the least sophisticated consumer, reconcilable with the validation notice. *Id.* Courts also consider whether the letter "emphasizes one option over the other" or otherwise suggests that the consumer forgo his or her right to contest the debt in favor of immediate payment. *Id.*

For instance, in *LaMonaca v. FirstStates Financial Services Corp.*, the court considered whether a statement that warned that "if a suitable resolution

has not been made within thirty (30) days of this correspondence your account may be reported to the Credit Bureau." 2019 WL 2636656 at *5 (D.N.J. June 27, 2019). The court concluded that this language overshadowed the validation notice because, even though it did not explicitly contradict the validation notice, the phrase "suitable resolution" might appear to an unsophisticated consumer to require repayment of the debt, and a threat to report a delinquent debt to credit agencies "premised on a requirement to satisfy the debt" constituted "a violation of § 1692g." *Id.* at 6 (citing *McStay v. I.C. Sys., Inc.*, 308 F.3d 188, 191 (2d Cir. 2002)).

A collection letter similar to this one has been litigated before. In *Belichenko v. Gem Recovery System*, the U.S. District Court for the Eastern District of New York considered a letter from Gem Recovery Systems[2] which contained language similar to the language in this letter, and rejected a claim that it overshadowed the validation notice. 2017 WL 6558499 (E.D.N.Y. Dec. 22, 2017). The court concluded that the notice merely stated that Gem Recovery System's policy was always to report delinquent accounts, and did not indicate that the plaintiff should "take action within any time frame that contradicts the statutory thirty-day period." *Id.* at *4 (quoting *Sebrow v. ER Solutions, Inc.*, 2009 WL 136026 at *5 (E.D.N.Y. Jan. 20, 2009)). The court concluded that because "the collection letter simply notified Belichenko of GRS's general policy of reporting delinquent accounts, 'regardless of how, if at all, Plaintiff responded to the [collection letter],'" *id.* at 4, Gem Recovery Systems had not overshadowed the validation notice.

The court in *Belichenko* described the relevant language in its letter as follows:

> Your account has been turned over to us from the above mentioned client for collection. Since your account is delinquent, we will use any collection activity to collect this debt due to our client. Our policy is to report delinquent account information to

---

[2] For ease of reference I will call the debt collecting entity "Gem Recovery Systems" because that is the name referenced on the letter, although, as explained above, that is a trade name for Awar Holdings, Inc.

> Trans Union and Experian Credit Bureaus which may impair your
> credit rating and your ability to obtain credit in the future.

The same language appears in the letter sent to plaintiff Rodriguez here.

Just below this section, however, the letter sent to Rodriguez states the following:

> The records of the creditor show that the debt is immediately due
> or past due. Full payment will avoid further collection activities on
> this account.[3]

This section, in my view, tips the scales toward a finding that the guarantees of the validation notice were overshadowed. The least sophisticated consumer could interpret this portion of the letter as suggesting that only prompt full payment would avoid further "collection activities" and an adverse report to the credit bureaus.

I draw that reading from the text of the letter as follows: The letter tells the consumer that "[s]ince your account is delinquent, we <u>will</u> use any collection activity to collect this debt." (emphasis added). That is, Gem Recovery Systems threatens to take action in no uncertain terms. What might that "collection activity" include? The very next line in the letter states that "[o]ur policy is to report delinquent account information to Trans Union and Experian Credit Bureaus which may impair your credit rating." Finally, the letter states that "[f]ull payment will avoid further collection activities on this account." To some readers, there would be an implied "unless." If the debt is going to be reported to credit agencies no matter what, there would be no point in placing this warning in the context of the threat of collection activity. The implication is that reporting the debt to the credit bureau, like further dunning efforts, can be averted by full and immediate payment.

The letter later includes the validation notice, which suggests that the debtor may obtain some breathing space. At no point does it clarify that either

---

[3]   It is not clear whether this portion was also in the letter in *Belichenko*. Even if it was, however, *Belichenko* did not quote or focus on it.

(a) nothing the debtor could do would prevent Gem from reporting the delinquent account to credit agencies no matter what, or (b) disputing the debt pursuant to the process set out in the validation notice would also postpone any report of the delinquent account to the credit agencies. The unsophisticated reader could carry away the impression (whether true or false) that by paying the debt now, and in full, she can avoid any report to credit bureaus. That is precisely the "stampeding" effect at which cases such as *LaMonaca* are aimed.

The validation notice is "overshadowed" because, although it sets forth the rights of the parties as required, the letter makes it appear that the debtor, by availing herself of the procedure set forth in the validation notice, might lose her protection from at least one adverse credit consequence (*i.e.,* reporting to credit agencies). The letter thus "emphasizes one option [immediate payment] over another [seeking validation]" and "suggests that [plaintiff] forego the second option in favor of immediate payment." *Quadramed*, 225 F.3d at 356. One debtor might conclude that immediate payment of the debt, even if disputed, would earn the creditor's forbearance from reporting it to a credit agency; another might conclude that it is pointless to dispute the debt, because even if she does, it will be reported to credit agencies as a delinquency[4]

This letter does suggest to the least sophisticated debtor that she "must take action within any time frame that contradicts the statutory period." Specifically, it implies that the plaintiff must pay the debt quickly or face an adverse credit report.

In that respect this letter embodies a somewhat less blatant version of the techniques described in *Adams v. Law Offices of Stuckert & Yates*, 926 F. Supp. 521, 524–25 (E.D. Pa. 1996). There, the letter stated as follows:

> Please send a check in the above amount [$85.00] to this office, made payable to Stephen L. Needles, Attorney at Law. If I do not

---

[4]     If a disputed debt is reported to a credit agency, its disputed status must be noted. *Riccio v. Sentry Credit, Inc.*, 954 F.3d 582, 585 (3d Cir. 2020) (en banc) ("[C]ollectors are prohibited from reporting disputed debts to credit agencies without noting the fact of a dispute." (citing 15 U.S.C. § 1692e(8))).

> receive prompt payment I must take further action to collect this
> debt, and I do not have to give you any further notice. I may bring
> a lawsuit, which can result in garnishment or execution on your
> personal property. I may report you to credit agencies. If I do take
> legal action, I will ask the court to award costs, service fees, and
> attorney's fees.

The court reasoned that the attorney's demand for "prompt" payment "could be construed by the least sophisticated consumer to mean that Defendants would file suit and report the consumer to the credit agencies in the absence of 'prompt' or 'immediate' payment." *Id.* at 527; *see also Quadramed*, 225 F.3d at 355 (citing *Adams* favorably).

It is not enough, then, that the letter contained the required validation notice. Its "mere inclusion" in the letter is "not sufficient to comply with the law"; rather, the meaning of the validation notice must be "conveyed effectively to the debtor" and not undermined by the rest of the letter. *Gottesman v. Virtuoso Souring Grp., LLC*, 400 F. Supp. 3d 81, 88 (D.N.J. 2019) (quoting *Quadramed*, 225 F.3d at 354). Here, while the validation notice was included in the letter, Gem Recovery Systems wrote the letter in such as manner so as to discourage consumers from invoking their rights, by implying that doing so would be an inferior, second-best option.

Or so a fact finder could conclude. None of this is to say that a collection letter could not, in an appropriate manner, inform a debtor that failure to repay a debt could result in adverse consequences to their credit rating. What a collection letter may not do, however, is undermine the validation notice. I find that the Third Amended Complaint sufficiently states a claim in this regard.

### 3. Whether "MONOC" Adequately Identifies the Creditor

Plaintiff also claims that the use of the name "MONOC" was insufficient to comply with the requirement in the FDCPA that a debt collection notice state the creditor's name.[5] Plaintiff argues that the creditor in this case was

---

[5] Plaintiff also makes other arguments regarding the omission of the creditor's name which I find unpersuasive. She argues, for instance, that the letter failed to properly identify that MONOC was the debtor because the letter only stated that MONOC was a

Monmouth Ocean Hospital Services Corp., not "MONOC." Defendant counters that Monmouth Ocean Hospital Services Corp. uses "MONOC" as its trade name.

A written notice issued to a debtor by a debt collector must contain "the name of the creditor to whom the debt is owed." 15 U.S.C. § 1692g(a)(2). "[T]he mere presence of the correct name in the notice somewhere," however, "does not suffice." *Steffek v. Client Services, Inc.*, 948 F.3d 761, 765 (7th Cir. 2020). "To satisfy [Section] 1692g(a)(2), the debt collectors' notice must state the required information clearly enough that the recipient is likely to understand it." *Leonard v. Zwicker & Assocs., PC*, 713 Fed. Appx. 879, 882-83 (11th Cir. 2017). The notice must therefore "be clear enough that a naïve consumer comes away from the notice understanding the 'identify of the creditor.'" *Id.* at 883.

"At the same time, nothing in the FDCPA expressly requires that debt collectors use a creditor's full business name or its name of incorporation when identifying the 'name of the creditor' in a § 1692g notice." *Id.* "[R]equiring a debt collector to identify the creditor by its full business name would not always result in greater clarity to a naïve consumer, who may be more familiar with a commonly used trade name." *Id.* As the *Zwicker* court noted, the use of trade names is approved in several FDCPA contexts; the FTC, in guidance issued regarding a provision which requires debt collectors to use their "true name" in the course of debt collection, permits collectors to use their "full business name, the name under which [they] usually transact[] business, or a commonly-used acronym." *Id.* (quoting Federal Trade Commission, Statements of General Policy or Interpretation, Staff Commentary on the Fair Debt

---

"client" rather than a "creditor." (DE 61 at 14.) Such arguments have been repeatedly rejected by courts in this district. A debtor can understand that a collection agency's "client" is the creditor. *See Rodriguez v. Certified Credit & Collection Bureau*, 2019 U.S. Dist. LEXIS 153661 at *7–8 (D.N.J. Sept. 9, 2019) ("a debt collector's reference to its 'client' is sufficient to convey to the least sophisticated debtor that client is the creditor."); *see also Johnson v. Simm Assocs., Inc.*, 335 F. Supp. 3d 680, 684–85 (D. Del. 2018); *Molina v. AR Res., Inc.*, 2018 WL 1027449 at *2 (D.N.J. Feb. 22, 2018).

Collection Practices Act, 53 Fed. Reg. 50097 (1988)). The Eleventh Circuit analogized from that provision to conclude that a debt collection letter which identified the original creditor as "American Express" was sufficient even though the creditor's precise name was actually "American Express Receivables Financing Corporation III, LLC." *Id.* at 884.

Thus, the proper inquiry is not whether a company used its corporate name or an acronym in identifying itself to the public. "Instead, the question is whether the least sophisticated consumer would recognize the name in the [c]ollection [l]etter and understand, from that name, with whom the debt originated." *Iadevaio v. LTD Financial Services, L.P.*, 2019 WL 4094922 at *6 (E.D.N.Y. Aug. 29, 2019). Thus, the court in *Iadevaio* concluded that "a debt collector, in identifying the creditor, need not use the creditor's full business name or name of incorporation so long as it uses the name under which the creditor regularly transacts business, or the name used with the consumer from the inception of the credit relationship." *Id.* at *6; *see also Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 235 (2d Cir. 1998) ("Although a creditor need not use its full business name or its name of incorporation to avoid FDCPA coverage, it should use the name under which it usually transacts business, or a commonly-used acronym, or any name that it has used from the inception of the credit relation.").

Often courts will examine the history between creditor and debtor to determine whether, *e.g.,* an acronym is sufficient to identify the creditor. In *Iadevaio*, for example, the court concluded that a collection notice which specified the creditor as "Show Master Card" adequately informed a debtor that the debt collection agency was seeking to collect a debt on behalf of an entity named Bryant State Bank. The court noted that the creditor had used the name "Show Master Card" "from the beginning of the credit relationship," including in a Solicitation Form for the credit card. 2019 WL 4094922 at *7. It noted that the solicitation form referred to a website titled www.showcardcc.com/accept, and the Form containing a phone number for

the "Show Mastercard Assistance Line" which consumers could call. *Id.* Furthermore, the monthly statement that the debtor received used the name "Show Master Card" along with the name "Bryant State Bank," which, again, was the actual issuer of the card. *Id.* This approach makes sense; any consumer, including the least sophisticated consumer, would be better informed if a debt collection letter contained a name that he or she recognizes as associated with the debt rather than the legal name of incorporation that he or she might be hearing for the first time.

Courts may also consider whether the name used by the collector is a trade name widely known to many. In *Hammett v. AllianceOne Receivables Management, Inc.*, the District Court for the Eastern District of Pennsylvania concluded that a debt collection notice which identified the client as "PNC Bank" was clear enough that the least sophisticated consumer would recognize to whom they owed the debt. 2011 WL 3819848 at *5 (E.D. Pa. Aug. 30, 2011). The court explained that though PNC Bank has many business affiliates, all affiliates operated under the umbrella name PNC Bank, "PNC Bank" appeared on the front of all PNC credit cards, and there were no other corporations with names similar to PNC Bank that might confuse consumers. *Id.*

Debt collectors must be careful when relying on the fact that a name is a widely known trade name, however. In *Schneider v. TSYS Total Debt Mgmt, Inc.*, the District Court for the Eastern District of Wisconsin considered a debt collection letter which identified a creditor as simply "TARGET." 2006 WL 1982499 at *1 (E.D. Wis. July 13, 2006). The Court concluded it was not clear whether "TARGET" referred to "Target National Bank, Target Customs Brokers, Inc., or a corporation that simply identifies itself by the acronym 'T.A.R.G.E.T.'" *Id.* at 3. It concluded that "given that the full and complete name of the creditor is unknown, at least to the court, and given the fact-based nature of the confusion question, it would not be appropriate, at this early stage of the litigation, for the court to determine whether the unsophisticated debtor would be confused by the collection letter." *Id.*

17

The principle undergirding all of these cases is that a debt collection notice need not use any particular name for a creditor, but rather is required to use a name that adequately conveys the identity of the creditor. Depending on the circumstances, that could be an acronym, a trade name, or a business's name of incorporation.

Whether "MONOC" is an adequate designation for the entity more formally known as Monmouth Ocean Hospital Services presents a context-sensitive issue of fact, unsuitable for resolution on a motion to dismiss. Since I make every inference in the plaintiff's favor on a motion to dismiss, I must assume that MONOC is not an adequate designation. I therefore conclude that plaintiff has pled a claim under 15 U.S.C. § 1692g.

## 4. Whether the Letter is Otherwise Unfair, Unconscionable, False, Deceptive, and Misleading

Because I find that plaintiff has pled the two claims discussed above, I will grant her motion to amend and deny the motion to dismiss as moot. I thus need not reach the alternative theory that the letter is unfair, false, deceptive, unconscionable or misleading.

## 5. Whether Sam A. Awar Can Be Held Individually Liable

The parties dispute whether the complaint adequately pleads facts indicating that Sam Awar could be held individually liable. "[A]n entity or individual who exercises control over the activities of a debt-collecting business may be liable under the Act." *Shaw v. Hayt*, 2021 U.S. Dist. LEXIS 27164 at *16 (W.D. Pa. Feb. 12, 2021); *Yentin v. Michaels, Louis & Associs.*, 2011 WL 4104675 at *6 (E.D. Pa. Sept. 15, 2011); *see Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227 (3d Cir. 2005) (same). Defendants claim that none of these bases for liability can apply because plaintiff's claims against Awar Holding, Inc. fail. As discussed *supra*, however, I disagree. I thus find that the Third Amended Complaint adequately pleads a claim against Mr. Awar and amendment would not be futile.

18

**IV.    CONCLUSION**

I conclude that amendment would not be futile because the proposed amended version would state a claim. I therefore **GRANT** the motion to amend. The defendant's motion to dismiss is accordingly **DENIED** as moot.

Date: July 19, 2021

/s/ Kevin McNulty
_____
**KEVIN MCNULTY**
**United States District Judge**

19