## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DELIA RODRIGUEZ, individually and on behalf of those similarly situated,<br><br>  Plaintiff,<br><br>  v.<br><br>AWAR HOLDING, INC. also known as Gem Recovery Systems, Accounts Receivable Management Corp, Accounts Receivable Management Corp (ARMC), and ARMC;<br>SAM A. AWAR; and<br>JOHN DOES 3 to 10,<br><br>  Defendants. | Civil Action 2:18-cv-16251-KM-JBC |

---

**BRIEF ON BEHALF OF
PLAINTIFF, DELIA RODRIGUEZ
IN OPPOSITION TO MOTION TO DISMISS [DOC. 79]**

**RETURNABLE: DECEMBER 6, 2021
[ORAL ARGUMENT REQUESTED]**

---

Philip D. Stern
KIM LAW FIRM LLC
411 Hackensack Avenue, Suite 701
Hackensack, New Jersey 07601
(201) 273-7117

*Attorneys for Plaintiff, Delia Rodriguez*

18-107

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iii

INTRODUCTION ....................................................................................1

PROCEDURAL HISTORY...........................................................................2

STATEMENT OF FACTS ...........................................................................6

LEGAL ARGUMENTS................................................................................8

    POINT I:  STANDARD OF REVIEW..........................................................8

          A.    The Rule 12(b)(6) Standard: Identifying &
                Analyzing the Motion Record. ........................................8

          B.    The Rule 12(b)(6) Standard: Standing Elements. ..........10

    POINT II: PLAINTIFF COMMENCED THIS ACTION AS A
           "CASE" SEEKING RELIEF FOR THE VIOLATION OF
           HER INDIVIDUAL RIGHTS BECAUSE OF WHAT
           DEFENDANTS DID TO HER. ..................................................10

CONCLUSION.....................................................................................17

# TABLE OF AUTHORITIES

## CASES

*Animal Science Products, Inc. v. China Minmetals Corp.*,
654 F.3d 462 (3d Cir. 2011) .........................................................................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................9

*Baker v. Carr*,
369 U.S. 186 (1962)......................................................................................11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................8

*Bock v. Pressler & Pressler, LLP*,
254 F. Supp. 3d 724 (D.N.J. 2017)................................................................13

*Connelly v. Lane Constr. Corp.*,
809 F.3d 780 (3d Cir. 2016) ............................................................................8

*Galligan v. Westfield Ctr. Serv., Inc.*,
82 N.J. 188 (1980) ........................................................................................16

*In re Horizon Healthcare Servs. Data Breach Litig.*,
846 F.3d 625 (3d Cir. 2017) ............................................................................8

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)................................................................................ 10, 11

*Mayer v. Belichick*,
605 F.3d 223 (3d Cir. 2010) ............................................................................9

*Mitzner v. W. Ridgelawn Cemetery, Inc.*,
311 N.J. Super. 233 (N.J. App. Div. 1998) ..................................................16

*Owner Operator Indep. Drivers Ass'n v. Pa. Tpk. Comm'n*,
934 F.3d 283 (3d Cir. 2019) .......................................................................9, 10

*Rotkiske v. Klemm*,
890 F.3d 422 (3d Cir. 2018), *aff'd* 140 S. Ct. 355 (2019)...................... 15, 16

*Santiago v. Warminster Twp.*,
629 F.3d 121 (3d Cir. 2010) ............................................................................8

*Spokeo, Inc. v. Robins*,
 136 S. Ct. 1540 (2016)..............................................................................12

*St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*,
 898 F.3d 351 (3d Cir. 2018) ....................................................................13

*Thomas v. Youderian*, 232 F. Supp. 3d 656 (D.N.J. 2017)....................................13

*TransUnion LLC v. Ramirez*,
 141 S. Ct. 2190 (2021)..........................................................................1, 14

## STATUTES

15 U.S.C. § 1692e ................................................................................6, 13

15 U.S.C. § 1692f................................................................................6, 13

15 U.S.C. § 1692g(b) ...............................................................................6

15 U.S.C. § 1692k(d) .............................................................................15

## OTHER AUTHORITIES

Fed. R. Civ. P. 12(d) ...............................................................................9

## INTRODUCTION

Defendants' Motion[1], filed in lieu of an answer to Plaintiff's Third Amended Complaint [Doc. 71], challenges Plaintiff's standing under *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021). Under in-circuit pre-*Ramirez* authorities, Plaintiff has standing. The Motion calls on the Court to determine whether *Ramirez* discredits those authorities.

Plaintiff claims Defendants' initial collection letter mailed to her invades and violates her rights protected by the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.* Defendants' FDCPA violations did not cause a physical injury or monetary harm to Plaintiff. But, as provided under 15 U.S.C. § 1692k(a), she seeks statutory damages for herself and the putative class, as well as attorney's fees, for what Defendants did to her.

If the Court concludes that *Ramirez* requires dismissal, Plaintiff will promptly assert the same claims in New Jersey state court if this Court concludes it lacks subject matter jurisdiction.

---

[1] Defendant Awar Holding, Inc. filed the Motion. Co-defendant Sam A. Awar joined in the Motion. [Doc. 80.]

## PROCEDURAL HISTORY

Plaintiff, individually and on behalf of those similarly situated, commenced this action on November 16, 2018, in the United States District Court, District of New Jersey against Gem Recovery Systems, Frank Giglio; and John Does 1 to 10. [Doc. 1]. Gem Recovery Systems moved for an extension of time to answer, move, or otherwise respond to the Complaint on December 12, 2018. [Doc. 4]. Gem Recovery Systems' motion was granted on December 13, 2018. On December 31, 2018, Gem Recovery Systems filed its Answer to the Complaint. [Doc. 5]. On January 21, 2019, Plaintiff filed her First Amended Complaint against Gem Recovery Systems, Frank Giglio; and John Does 1 to 10. [Doc. 7]. Gem Recovery Systems filed its Answer to the First Amended Complaint on January 28, 2019. [Doc. 8].

A pretrial scheduling conference was held on February 20, 2019, and on February 22, 22019, a pretrial scheduling order was entered establishing timelines for initial disclosures, the discovery schedule and any confidentiality orders, future conferences, and motions. [Doc. 10]. On July 16, 2019, an Amended Scheduling Order was entered extending discovery. [Doc. 14]. The Scheduling Order was further amended on November 18, 2019 [Doc. 19], December 26, 2019 [Doc. 22], and April 6, 2020 [Doc. 31], and July 8, 2020 [Doc. 37]. On April 6, 2020, an Order was entered further extending discovery and ordering the parties to meet and

confer regarding discovery disputes. [Doc. 31].

On March 6, 2020, Plaintiff filed her Motion for Leave to File a Second Amended Complaint. [Doc. 26]. On April 6, 2020, Gem Recovery Systems filed their opposition to Plaintiff's Motion for Leave to File a Second Amended Complaint. [Doc. 32]. Plaintiff filed her Reply in Further Support on April 13, 2020. [Doc. 33]. Plaintiff's Motion for Leave to File a Second Amended Complaint was granted on October 27, 2020. [Doc. 39].

Plaintiff filed her Second Amended Class Action Complaint on November 12, 2020, against Defendants Gem Recovery Systems, LLC, Awar Holdings, Inc., Sam A. Awar, and John Does 1 to 10. [Doc. 41]. Awar Holdings, Inc. moved for an extension of time to answer, move, or otherwise reply on December 16, 2020. [Doc. 46]. Sam A. Awar Moved for an extension of time to answer, move, or otherwise reply on December 16, 2020. [Doc. 49]. On January 5, 2021, a Consent Order was entered extending time to answer or otherwise respond to the amended complaint. [Doc. 52]. On January 19, 2021, Awar Holdings, Inc. trading as Gem Recovery Systems, incorrectly named as Gem Recovery Systems, LLC and Awar Holdings, Inc. filed their Answer to the Second Amended Complaint. [Doc. 53].

On January 22, 2021, Defendant Sam A. Awar filed a Motion to Dismiss. [Doc. 54].

On February 8, 2021, Plaintiff filed a Proposed Third Amended Class Action

Complaint.  [Doc. 59]. On February 11, 2021, an Order was entered directing Plaintiff to file a motion to amend by February 26, 2021 and staying discovery. [Doc. 60]. On February 16, 2021, Plaintiff filed her Opposition to the Motion to Dismiss Filed by Defendant Sam A. Awar. [Doc. 61].

On February 26, 2021, Plaintiff filed her Motion for Leave to file Third Amended Class Action Complaint (hereinafter "Complaint") against Defendants Awar Holding, Inc. also known as Gem Recovery Systems, Accounts Receivable Management Corp, Accounts Receivable Management Corp (ARMC), and ARMC, Sam A. Awar, and John Does 3 to 10 (collectively "Defendants"). [Doc. 63].

On March 22, 2021, Defendant Sam A. Awar opposed Plaintiff's Motion for Leave to File a Third Amended Complaint. [Doc. 65]. Plaintiff filed her reply on March 30, 2021. [Doc. 66]. The Court issued an Opinion and entered an Order on July 19, 2021, granting Plaintiff's Motion for Leave to Amend and denying Defendant's Motion to Dismiss. [Doc. 69, 70]. Plaintiff filed the Third Amended Class Action Complaint on July 26, 2021. [Doc. 71]. The Court issued an Order, upon consent, that Defendants shall answer on or before September15, 2021. [Doc. 72]. A Consent Order extending time to answer, move, or otherwise respond was entered on September 14, 2021. [Doc. 74]. An additional Consent Order extending time to answer, move, or otherwise respond was entered on September 22, 2021. [Doc. 78]. An unnumbered docket entry on September 22, 2021 further extended

the deadline to September 30, 2021.

On September 29, 2021, Defendants Gem Recovery Systems, LLC and Anwar Holdings, Inc. filed a Motion to Dismiss. [Doc. 79]. Defendant Sam A. Awar joined Defendants Gem Recovery Systems, LLC and Anwar Holdings, Inc.'s motion on September 30, 2021. [Doc. 80]. Plaintiff now submits her opposition to the Defendant's pending motion to dismiss.

## STATEMENT OF FACTS

Plaintiff relies on the factual allegations in her Third Amended Complaint (Doc. 71). Those allegations establish—and Defendants' Motion does not challenge—that it is a debt collector who, when attempting to collect a debt from Plaintiff, falsely represented that Defendants had reported the account to the credit bureaus and did not identify the creditor to whom the debt was owed. Specifically:

A.      The letter represented the Defendants were presently reporting Plaintiff to credit bureaus by stating by stating:

> Our policy is to report delinquent account information to Trans Union and Experian Credit Bureaus which may impair your credit rating and your ability to obtain credit in the future.

In fact, Defendants were not credit reporting and would never do so unless (*i*) the debt exceeded $25, (*ii*) the consumer had not disputed the debt, (*iii*) the consumer failed to respond to three collection letters, *and* (*iv*) no payments were received for 90 days. Thus, this Credit Reporting Language is false and misleading (violating 15 U.S.C. § 1692e), makes extortion-like threats which is an unfair and unconscionable means to attempt to collect debts (violating 15 U.S.C. § 1692f), and overshadows the consumer's 30-day right to dispute the debt (violating 15 U.S.C. § 1692g(b)).

B.      The letter did not identify the creditor to whom the debt as required under 15 U.S.C. § 1692g(a)(2). First, the letter identified "MONOC" which is not the

name, acronym, abbreviation, or registered alternate name for the creditor,

Monmouth Ocean Hospital Service Corp. Second, even if MONOC means

Monmouth Ocean Hospital Service Corp., the letter does not identify it as

the creditor. Instead, the letter identified a "client" who had the account

"turned over to us…for collection." [Doc. 71-1.] Defendants' "client" does

not identify MONOC (or anyone else) as the creditor.

## LEGAL ARGUMENTS

**POINT I:     STANDARD OF REVIEW.**

Defendants' Motion attacks Plaintiff's standing under Article III of the

Constitution based on the allegations in her Third Amended Complaint. "In

reviewing facial challenges to standing, we apply the same standard as on review

of a motion to dismiss under Rule 12(b)(6)." *In re Horizon Healthcare Servs. Data*

*Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017).

*A.     The Rule 12(b)(6) Standard: Identifying & Analyzing the Motion Record.*

A pleading seeking relief must "state a claim upon which relief can be

granted." FED. R. CIV. P. 12(b)(6).

> But detailed pleading is not generally required. The
> Rules demand "only 'a short and plain statement of
> the claim showing that the pleader is entitled to
> relief,' in order to 'give the defendant fair notice of
> what the ... claim is and the grounds upon which it
> rests.'"

*Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (citations

omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007)).

Within the Third Circuit, a court engages in a three-step analysis for

determining the sufficiency of a pleading challenged under Rule 12(b)(6):

*First*, must "tak[e] note of the elements a plaintiff must plead to state a

claim." *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citations

page **8** of 17

and footnotes omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 at 675, 679 (2009)).

*Second*, a court excludes those allegations which, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id*.

*Third*, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* Consideration of "matters outside the pleadings" must be excluded or the motion treated as one for summary judgment under Rule 56, the "well-pleaded factual allegations." FED. R. CIV. P. 12(d). Nevertheless, there are materials literally "outside the pleadings" which the Court considers without converting a Rule 12(b)(6) motion into a Rule 56 motion. Hence, the motion record includes:

> [1] the factual allegations but "disregard[ing] conclusory assertions and bare recitations of the elements," *Owner Operator Indep. Drivers Ass'n v. Pa. Tpk. Comm'n*, 934 F.3d 283, 290 n.7 (3d Cir. 2019));
>
> [2] "exhibits attached to the complaint," *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010);
>
> [3] "matters of public record," *id.*; and
>
> [4] "undisputedly authentic documents if the complainant's claims are based upon these documents," *id.*

The truth of the facts in those four sources and "every reasonable inference in favor of the nonmoving party" from them constitute the assumed facts from which the Court must consider the elements of the cause of action to decide whether a plausible claim has been stated. *Owner Operator*, 934 F.3d at 290 n.7.

Finally, the moving party bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). Thus, to the extent Defendants have not challenged an element of standing, that element is not in issue.

### B.   *The Rule 12(b)(6) Standard: Standing Elements.*

There are three elements for standing under Article III. Defendants only challenges standing on the first element; namely, "the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent, not "conjectural" or "hypothetical." ' " *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations omitted).

### POINT II:   PLAINTIFF COMMENCED THIS ACTION AS A "CASE" SEEKING RELIEF FOR THE VIOLATION OF HER INDIVIDUAL RIGHTS BECAUSE OF WHAT DEFENDANTS DID TO HER.

This Motion is about power—the judicial power. It is about whether the federal judiciary has the power to grant relief for what Defendants did to Plaintiff which invaded and violated her rights protected by a statute enacted by the federal legislature and signed by the federal executive.

The "judicial Power of the United States" is "vested" in the federal courts. Constitution, Article III, Section 1. That Power extends to "Cases" and "Controversies." *Id.* at Section 2, par. 1. The Supreme Court has "original Jurisdiction" as to certain "Cases" and "appellate Jurisdiction" as to other "Cases." *Id.* at par. 2. Thus, no federal court—including the Supreme Court—can exercise the "judicial Power" except with respect to a case-or-controversy.

Under Article III, Congress's role is limited to establishing "inferior Courts," and to make "Exceptions" and "Regulations" concerning the Supreme Court's jurisdiction.

An Article III case-or-controversy cannot exist unless the plaintiff has standing. The "gist" of standing turns on whether the plaintiffs "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Baker v. Carr*, 369 U.S. 186, 204 (1962).

In 1992, the Supreme Court identified the three elements comprising "the irreducible constitutional minimum of standing." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The first element requires that "the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or

hypothetical[.]" *Id.* (internal quotation marks omitted).

In 2016, the Supreme Court emphasized that, under *Lujan*, a "concrete" "invasion of a legally protected interest" is different from a "particularized" "invasion of a legally protected interest." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). Thus, the Supreme Court admonished the Ninth Circuit for treating "concrete and particularized" as a single analysis, The Ninth Circuit erroneously "focused on the second characteristic (particularity), but it overlooked the first (concreteness)." *Id.* 136 S. Ct. at 1545. Consequently, the Supreme Court expounded on the concreteness analysis.

The Supreme Court observed that tangible injuries are "easier to recognize" but "intangible injuries can nevertheless be concrete." *Spokeo*, 136 S. Ct. at 1549. The Supreme Court noted examples under the common law which provided remedies for certain wrongs without proof of a tangible injury and recognized Congress can provide remedies for harms which the law had not previously recognized as remediable. But Congress's exercise of its power to legislate those rights and remedies does not *ipso facto* mean that a *federal* court has the Constitutional power to adjudicate those rights or grant those remedies because, in the absence of a "concrete" "invasion of a legally protected interest," there is no case-or-controversy. *Id.* This begs the question: When, if ever, is there an invasion of a plaintiff's legally protected interest which is not a concrete?

*Spokeo* commented on intangible harms from violations of procedural rights. The Supreme Court observing that, if the failure to comply with the legislated procedure does not create a real risk of the harm to the plaintiff which Congress sought to prevent, then the procedural violation does not result in a concrete injury in fact. Moreover, for an intangible harm to be concrete, it must have "a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.*

After *Spokeo*, courts within the Third Circuit found that the invasion of the substantive rights protected by the FDCPA were, by themselves, sufficient to constitute an intangible harm thereby establishing a consumer's standing to have the claim adjudicated in a federal court. *See, e.g., St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*, 898 F.3d 351, 358 (3d Cir. 2018) (standing for violation of § 1692f(8)); *Bock v. Pressler & Pressler, LLP*, 254 F. Supp. 3d 724 (D.N.J. 2017) (standing for violation of § 1692e from misrepresenting level of attorney involvement in preparing collection complaint); and *Thomas v. Youderian*, 232 F. Supp. 3d 656 (D.N.J. 2017) (standing for violation of § 1692e and § 1692f from threat to add a convenience fee for credit card payments).

More recently, however, the Supreme Court suggested a narrower view of intangible harms. Citing *Spokeo*, the Supreme Court stated:

> Central to assessing concreteness is whether the
> asserted harm has a "close relationship" to a harm

> traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms including (as relevant here) reputational harm.

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021).

To be clear, the standing issue concerns the forum where a claimant's claim can be resolved because those claims may always be asserted in state courts of general jurisdiction who must apply federal law. Thus, after *Ramirez*, a plaintiff may find this Court's doors closed when a debt collector has violated the plaintiff's rights but the plaintiff cannot show a physical harm, monetary harm, or an intangible harm which has a close relationship to a traditionally-recognized harm.

The *Ramirez* standard presents many conceptual problems. How does a court—or a lawyer advising a client—measure the relationship between the intangible harm and the traditionally-recognized harm to determine the requisite closeness? Historically, the Common Law has expanded rights and remedies particularly in the area of torts. Traditionally-recognized harms in 1960 may have been unfathomable futuristic concepts to an 18th or 19th century jurist. Furthermore, some States may have traditionally recognized certain harms when other States refused to recognize them. Is the analysis limited to the jurisprudential history of the original 13 States?

Whatever problems may arise, the reality is that a consumer who can prove every element of a debt collector's violation of substantive rights protected by the

FDCPA may find that no federal court will enforce those rights.

*Ramirez*, a class action, involved alleged violations of the Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq.* The FCRA establishes a right and remedy for consumers when a credit reporting agency, after being informed of errors, fails or refuses to correct the error. But, under *Ramirez*, a federal court cannot award the consumer relief. Instead, the consumer must apply for credit knowing the credit issuer will receive an erroneous report before the consumer can sue in federal court.

Similarly, Defendants argue that, notwithstanding their use of false, deceptive, misleading, unfair, and unconscionable letters falsely threatening to damage Plaintiff's credit records, Plaintiff cannot enforce her federal rights in a federal court. In this regard, Plaintiff and Defendants share the same interest: there is little point in litigating a dispute in a forum which lacks the power to resolve the dispute. If the Court were to find that it lacks subject matter jurisdiction, Plaintiff may pursue her claims in New Jersey state court.

Although the FDCPA's limitations period is one year under 15 U.S.C. § 1692k(d), Third Circuit authority holds that the limitations period is subject to equitable tolling. *Rotkiske v. Klemm*, 890 F.3d 422, 428 (3d Cir. 2018) (confirming equitable tolling exists under the FDCPA but holding that the discovery rule does not apply) *aff'd* 140 S. Ct. 355 (2019) (affirming the inapplicability of the

discovery rule to the FDCPA but, at 361 n.3, declining to decide whether equitable tolling applies to § 1692k(d)). One basis for equitable tolling arises "where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Rotkiske v. Klemm*, 890 F.3d 422, 428 (3d Cir. 2018).

Under *Galligan v. Westfield Ctr. Serv., Inc.*, 82 N.J. 188 (1980), equitable tolling applies when claims are brought in this District but the case is dismissed for lack of subject matter jurisdiction and those claims are then asserted in New Jersey state court. Under *Galligan*, tolling began on November 16, 2018 when Plaintiff filed her Complaint and "does not end before the time to appeal [the dismissal in this Court] has expired." *Mitzner v. W. Ridgelawn Cemetery, Inc.*, 311 N.J. Super. 233, 238 (N.J. App. Div. 1998). Thus, if the Court were to dismiss for lack of subject matter jurisdiction, Plaintiff can timely commence an action in New Jersey state court before the expiration of the time to appeal that dismissal.

## CONCLUSION

For the foregoing reasons, Plaintiff, Delia Rodriguez respectfully requests that Defendant's Motion to Dismiss be denied.

Respectfully submitted,

KIM LAW FIRM LLC

By: _____*s/Philip D. Stern*_____

Dated: November 15, 2021                          Philip D. Stern