Yongmoon Kim
Email: ykim@kimlf.com
Philip D. Stern
Email: pstern@kimlf.com
KIM LAW FIRM LLC
411 Hackensack Avenue, Suite 701
Hackensack, New Jersey 07601
Tel. & Fax (201) 273-7117
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DELIA RODRIGUEZ, individually and on behalf of those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AWAR HOLDING, INC. also known as Gem Recovery Systems, Accounts Receivable Management Corp, Accounts Receivable Management Corp (ARMC), and ARMC;<br>SAM A. AWAR; and<br>JOHN DOES 3 to 10,<br><br>Defendants. | Civil Action 2:18-cv-16251-KM-JBC<br><br><br><br><br><br>**FOURTH AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND** |

Pursuant to the Court's Order [Dkt. Doc. 91] granting leave to file this

Fourth Amended Complaint against Defendants Awar Holding, Inc., Sam A. Awar,

and John Does 1 to 10, Plaintiff Delia Rodriguez, individually and on behalf of

those similarly situated, states:

## I.    NATURE OF THE ACTION

1.      This class action seeks relief arising from Defendants' invasion of the Plaintiff's rights and those of the class she seeks to represent as protected by the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*.

## II.    JURISDICTION AND VENUE

2.      This Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1331 because the case arises under a federal statute.

3.      Venue in this action properly lies in the District Court of New Jersey, Newark Vicinage, as Defendants regularly do business in this district.

## III.    PARTIES

4.      Plaintiff Delia Rodriguez is a natural person residing in Passaic County, New Jersey.

5.      Defendant Sam A. Awar is a natural person residing in the Borough of Emerson, Bergen County, New Jersey.

6.      On May 24, 2001, Awar incorporated Awar Holding, Inc. ("AHI") by filing a Certification of Incorporation which, among other things, named Awar as AHI's incorporator and sole director.

7.      Defendant Awar Holding, Inc. ("AHI") is a corporation of the State of New Jersey with its principal place of address located at 800 Kinderkamack Road, Suite 206 N, Oradell, New Jersey 07649.

8.      On information and belief, Awar has always been AHI's sole or principal shareholder, officer, director, and registered agent and AHI's registered office has always been at Awar's residence in Emerson, New Jersey.

9.      AHI filed the following with the State of New Jersey regarding the formation and alternate names of AHI:

a.  On June 7, 2001, AHI filed a Registration of Alternate Name, signed by Awar as the President of AHI, to use "Accounts Receivable Management Corp" in connection with AHI's commercial and consumer debt collection and accounts receivable consulting businesses.

b.   On June 7, 2001, AHI filed a Registration of Alternate Name, signed by Awar as the President of AHI, to use "ARMC" in connection with AHI's commercial and consumer debt collection and accounts receivable consulting businesses.

c.  On February 3, 2006, AHI filed a Registration of Alternate Name, signed by Awar as the President of AHI, to use "Accounts Receivable Management Corp (ARMC)" in connection with AHI's collection agency/consulting businesses.

d.  On February 3, 2006, AHI filed a Registration of Alternate Name, signed by Awar as the President of AHI, to use "Gem

Recovery Systems" with respect to AHI's collection agency business.

e. On February 3, 2011, AHI filed a Renewal, signed by Awar as the President of AHI, to continue its use of "Gem Recovery Systems" with respect to AHI's outsource receivable management and third-party collection agency businesses.

10. The Plaintiff is informed and believes, and on that basis alleges, that Defendants John Does 3 to 10 are the fictitious names of natural persons and/or business entities whose names are unknown to Plaintiff and who reside or are located within the United States but whose names are presently unknown to Plaintiff.

11. The initial Complaint [Doc. 1] and the First Amended Complaint [Doc. 7] identified the Defendants as Gem Recovery Systems, LLC and Frank Giglio as Gem's sole shareholder, officer, and director. By Order [Doc. 39], the Court granted leave to file the Second Amended Complaint (SAC) which added AHI and substituted Awar for Giglio and related the SAC back to the date that this action was originally filed. While there is insufficient information to aver a specific relationship between AHI trading as "Gem Recovery Systems" and Gem Recovery Systems, LLC, the following information, which appears from searching relevant subscription databases and public records, reflects the confusion between Gem

Recovery Systems, LLC and AHI trading under Gem Recovery Systems as its alternate name:

    a.  Frank Giglio formed Gem Recovery Systems, LLC as a New Jersey limited liability on May 3, 2004;

    b.  At some point in time, Gem Recovery Systems, LLC had its principal office at 99 Kinderkamack Road, Westwood, New Jersey which is about 1¼ miles north of AHI's office at 800 Kinderkamack Road in Oradell, New Jersey;

    c.  Gem Recovery Systems, LLC never registered any alternate name under which it conducted business;

    d.  On February 3, 2006, AHI registered Gen Recovery Systems as an alternate name.

    e.  Several months later (specifically, on June 22, 2006), Gem Recovery Systems, LLC filed its last annual report with the State of New Jersey;

    f.  On December 16, 2009, the State of New Jersey revoked Gem Recovery Systems, LLC for failure to file annual reports and to pay the annual reporting fee.

## IV.   BASIS FOR THIS AMENDMENT

12.     On February 15, 2022, the Court entered an order [Doc. 91] granting Defendant's Motion to Dismiss [Doc. 79] "without prejudice to the submission, within 30 days, of a proposed amended complaint that remedies the deficiencies identified in the" Court's written Opinion [Doc. 90].

## V.   FACTS

### A. Background

13.     Defendants are not in the business of extending credit, selling goods or services to consumers.

14.     Defendants regularly collect or attempt to collect past-due and defaulted debts of natural persons allegedly owed to others which were incurred primarily for personal, family or household purposes.

15.     The principal purpose of Defendants is the collection of debts.

16.     When attempting to collect debts, Defendants use the mails, telephone, the internet, and other instruments of interstate commerce.

17.     Furthermore, at all times relevant hereto, Awar was the principal or sole shareholder, officer, director, and registered agent of AHI and otherwise managed, supervised, and oversaw AHI's activities and controlled AHI including the establishment and implementation of AHI's practices, policies, and procedures followed by AHI's employees and agents acting under Awar's authority in the collection of debts placed with AHI.

18.     Defendants have asserted that 17 different payment obligations arising from a transaction in which Plaintiff received services from Monmouth Ocean Hospital Service Corp. [*See* Doc. 54-2 at ¶¶2 and 12.]

19.     Defendants have asserted that it mailed Plaintiff *five* different form letters in an attempt to collect each payment obligation for a total of 85 letters. [*Id.* at ¶8.]

20.     Plaintiff, however, received *six* different forms of letters on the letterhead of Gem Recovery Systems.

21.     An example of each of the six different forms is attached as Exhibits A through F (with some redactions).

22.     Each of the six different forms bear a unique title. Respectively, Exhibits A through F are titled:

        a.  "Collection Notice";

        b.  "Second Notice";

        c.  "Third Notice";

        d.  "Credit Reporting Notice";

        e.  "Notice of Credit Impairment"; and

        f.  "Pre-Legal Notice".

23.     Consistent with their being six different forms, the word in small print in the bottom right corner of each are, on information and belief, a

designation of the form or template used to create the letter (*i.e.*, "lettera",

"letterb", "letterc", "letterd", "lettere", and "letterf").

24.     Plaintiff received, opened, and read each of Defendants' letters

within several days after the letter's date.

25.     Facially, each letter was mailed to Plaintiff by AHI or at its

direction in an attempt to collect one of the 17 alleged payment obligations.

26.     Each letter included a table containing information about a specific

debt and one line in the table contained the following: "Client: MONOC".

27.     Plaintiff is unfamiliar with any entity named "MONOC" and, upon

reading each letter, was left uncertain as to whom the alleged debt was owed.

28.     AHI contends that MONOC is the trade name for the Monmouth

Ocean Hospital Service Corp. See Doc. 54-2 at ¶12.

29.     Based on counsel's search of the public records maintained by the

State of New Jersey, there is no foreign or domestic non-profit or for-profit

corporation with a registered alternate name of "MONOC."

30.     On information and belief, the Monmouth Ocean Hospital Service

Corp. is alleged to be, or to have been, a service provider of ambulance, first aid,

and paramedical services.

31.     By Defendants' own admission [Doc. 54-2 at ¶8], AHI sent 85 collection letters attempting to collect under 17 different account numbers including sending:

    a. three letters on each of four dates (2/24, 7/20, 10/11, & 12/6/17),

    b. four letters on each of three dates (3/30, 6/12, & 9/7/17),

    c. five letters on each of three dates (5/12/17, 11/15/17, & 7/16/18),

    d. seven letters on each of two dates (2/21 & 6/4/18), and

    e. nine letters on each of two dates (3/28 & 5/2/18[1]).

32.     According to Defendants [Doc. 54-2 at ¶8], there were five—not six—different letters it used, which they described ordinally as the 1st, 2nd, 3rd, 4th, and 5th letters. On a given account, each successive letter was mailed approximately five- to-six weeks after its immediate predecessor. Thus, on dates when Defendants mailed letters to Plaintiff on multiple accounts, there were different forms mailed. For example, on March 28, 2018, there were two 1st letters, three 2nd letters, two 3rd letters, and two 4th letters; and, on May 2, 2018, there were two 2nd letters, three 3rd letters, two 4th letters, and two 5th letters. To add to the confusion, the same form letter ("letterd" titled "Credit Reporting

---

[1] Defendants' table [Doc. 54-2 at ¶8] appears to have some errors. For example, the table identifies three different letters dated "11/15/2017" but the corresponding letters are dated November 16, 2017. Another example is the date of the 2nd letters on account # 3895 and # 4206 shown as "3/28/2020" which is presumed to be in error and intended to mean "3/28/2018."

Notice") was used to send two letters with both dated 10/12/2017 and showing a balance due of $93.39.

33.    Defendants' Collection Notice (a/k/a "lettera")—an example of which is attached as Exhibit A—appears to the earliest written communication from Defendants which they mailed in connection with the collection of a debt. Thus, the Collection Notice is presumed to be the "1st Letter" as described by Defendants in Doc. 54-2 at ¶8.

34.    The Collection Notice never identified MONOC as the creditor to whom the debt was allegedly owed—instead, MONOC is described as Defendants' client who turned an account over to Defendants for collection.

35.    A consumer such as Plaintiff is not presumed to know what information a debt collector must include in its initial collection letter and, therefore, the Collection Notice's identification of a "Client" is confusing.

36.    After stating that the account "is delinquent," the Collection Notice advised:

> Our policy is to report delinquent account information to Trans Union and Experian Credit Bureaus which may impair your credit rating and your ability to obtain credit in the future.

37.    The Collection Notice would lead the least sophisticated consumer to conclude that Defendants were already reporting the account to the credit bureaus because the Collection Notice states that the account is delinquent and

Defendants report delinquent accounts. Thus, if the consumer desired to remove the stain of Defendants' report on the consumer's credit, the consumer needed to act quickly and without regard for the included notice concerning the consumer's 30-day period within which to dispute the debt.

38.     In fact, however, Defendants do not report all delinquent accounts and they would not begin to report any account until several months after mailing the Collection Notice.

39.     Hence, the facts represented in the Collection Notice regarding credit reporting were untrue when made.

40.     As is true for everything in the Collection Notice and Defendants other letters, Defendants included its statements regarding credit reporting for the purpose of collecting a debt. Hence, Defendants' purpose in making their false statements in the Collection Notice regarding their credit reporting practices was to induce either a payment.

41.     At the time she received the Collection Notice, Plaintiff lacked the ability to pay the debts and, therefore, experienced helplessness because she believed that Defendants were and would continue to provide negative information about her to the credit reporting agencies.

42.     Contrary to the statement in the Collection Notice, Defendants' policies are (a) not to report any delinquent account until several months after

sending the Collection Notice, and (b) not to report any delinquent accounts which fails to satisfy the following conditions:

    a.  The amount of the debt is in excess of $25;

    b.  The consumer has not disputed the debt;

    c.  The debt remains unpaid for more than 90 days; and

    d.  The consumer has not responded to three letters.

43.    Defendants' "Third Notice"—an example of which is attached as Exhibit C—appears to be what Defendants refer to as the "3rd Letter" in Doc. 54-2 at ¶8. Based on Defendants' table in Doc. 54-2 at ¶8, the Third Notice is mailed approximately 10-12 weeks *after* the Collection Notice.

44.    Defendants' Third Notice contains the following statements concerning credit reporting:

> Unless acceptable arrangements are made to satisfy this debt, we will report this delinquency to the major credit bureaus; Trans Union and Experian, which may impair your credit rating and your ability to obtain credit in the future. Gem Recovery Systems regularly report accounts over twenty five dollars ($25.00) to the credit bureaus.

> These collection activities can be prevented if payment is sent to our office.

45.    Thus, Plaintiff did not receive any information negating any of the credit reporting misrepresentations made in the Collection Notice until nearly three months after receiving that Notice.Thus, the misrepresentations concerning

Defendants' credit reporting policies made in the Collection Notice was, in fact, an idle threat designed to induce payment from consumers who falsely believe that payment is necessary to protect their credit reputation.

46.     Approximately five-to-six weeks after mailing the Third Notice, Defendants mailed their 4th letter titled Credit Reporting Notice—an example of which is attached as Exhibit D—which including the following statements about Defendants' credit reporting:

> Continued non-payment of this account has resulted in our scheduling this debt for reporting to the credit bureaus; Trans Union and Experian. The reporting of this delinquent account to the credit bureaus may impair your credit rating and your ability to obtain credit in the future.
>
> It is most important that you remit payment before your past due account is added to your credit record; which may impair your credit rating. Once the derogatory reporting is listed on your credit report, it may remain on a credit report for as long as seven (7) years.
>
> To prevent our report of your delinquent debt to the credit bureaus and the derogatory credit rating, and to prevent the account from being considered for referral to our attorney for legal review, remit your payment to Gem Recovery Systems immediately. To contact us, call 201-722-8780.

47.     Thus, upon receipt of the Credit Reporting Notice about four months after receiving the initial Collection Notice, Plaintiff received a second

communication confirming that, contrary to the Collection Notice, Defendants had not reported any information about the debt to any credit bureau.

48.    Approximately five-to-six weeks after mailing the Credit Reporting Notice, Defendants mail a 5th letter titled "Notice of Credit Impairment" which, among other things, advises that "your account has been reported to Trans Union and Experian national credit bureaus."

49.    Thus, based on the timing of Defendants mailing the successive collection letters, the statements in the Third Notice, the Credit Reporting Notice, and the Notice of Credit Impairment confirm that Defendants do not credit report a debt until about five months *after* mailing the initial Collection Notice.

50.    The information in the initial Collection Notice concerning Defendants' credit reporting policy led Plaintiff and would lead an unsophisticated consumer to conclude Defendants had begun to report the debt or would imminently do so without waiting for the expiration of the 30-day period within which the recipient could dispute the debt.

51.    By misrepresenting in the Collection Notice that Defendants were currently or imminently reporting the debt to credit reporting agencies and withholding that Defendants would never report the debt if Plaintiff exercised her right to dispute the debt, Plaintiff was unaware that she could have prevented Defendants' from making the negative credit reports that they eventually made.

52.     Based on the timing of and statements made in the Third Notice, the Credit Reporting Notice, and the Notice of Credit Impairment, the unqualified representation made by Defendants in their initial Collection Notice concerning their credit reporting policy concerning delinquent accounts was false, deceptive, and misleading, created a false sense of urgency, and thereby overshadowed the 30-day period within which a consumer could dispute the debt.

53.     On information and belief, the initial Collection Notice was carefully worded to mislead consumers into believing that their credit reports had already been impaired and that, to prevent further damage to their credit, they had better pay the debt without regard to the 30-day period within which they could dispute the debt.

54.     In fact, had the consumer disputed the debt, the Defendants would never report the debt to any credit reporting agency.

55.     On information and belief, Awar drafted each of the collection letters or approved their use and oversaw the use of those letters by AHI.

56.     Defendants used the same procedures that they employed in sending their collection letters to Plaintiff when sending the same and/or similar letters to numerous other New Jersey consumers.

## VI.   CLASS ACTION ALLEGATIONS

57.     This action is brought and may properly proceed as a class action,

pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure.

Plaintiff brings this action individually and on behalf of those similarly situated.

Subject to discovery and further investigation which may cause Plaintiff to narrow,

expand or otherwise modify the following class definition at the time Plaintiff

moves for class certification, Plaintiff seeks certification of a class initially defined

as follows:

> All natural persons to whom Defendants mailed a
> letter dated on or after November 16, 2017 to a New
> Jersey address which, according to Defendants'
> records was their first written communication
> concerning a debt, was on the letterhead of Gem
> Recovery Systems, and either identified the client
> as "MONOC" or included the following sentence
> (or substantially similar sentence):

> Our policy is to report delinquent account
> information to Trans Union and Experian
> Credit Bureaus which may impair your credit
> rating and your ability to obtain credit in the
> future.

58.     Based on discovery and further investigation (including, but not

limited to, Defendants' disclosure of class size and net worth), Plaintiff may, in

addition to moving for class certification using modified definitions of the class,

class claims, and the class period, and/or seek class certification only as to

particular issues as permitted under FED. R. CIV. P. 23(c)(4). Such modified

definitions may be more expansive to include consumers excluded from the foregoing definitions but who were mailed a letter using substantially the same form or template as was used to create the Letters.

59.     Plaintiff seeks to recover statutory damages, attorney's fees, and costs on behalf of all class members under the Fair Debt Collection Practices Act.

60.     The class for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

61.     There are questions of law and fact common to the members of the class that predominate over questions affecting only individuals.

62.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. The FDCPA statutory scheme provides for statutory damages payable to each class member. A class action will cause an orderly and expeditious administration of the claims of the class and will foster economies of time, effort, and expense.

63.     The claims of the Plaintiff are typical of the claims of the members of the class.

64.     The questions of law and/or fact common to the members of the class predominate over any questions affecting only individual members.

65.     Plaintiff does not have interests antagonistic to those of the class.

66.     The class, of which Plaintiff is a member, is readily identifiable.

67.     Plaintiff will fairly and adequately protect the interests of the class and has retained competent counsel experienced in the prosecution of consumer litigation. Proposed Class Counsel have investigated and identified potential claims in the action; have a great deal of experience in handling class actions, other complex litigation, and claims of the type asserted in this action.

68.     The prosecution of separate actions by individual members of the class would run the risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for the Defendants in this action or the prosecution of separate actions by individual members of the class would create the risk that adjudications with respect to individual members of the class would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests. Prosecution as a class action will eliminate the possibility of repetitious litigation.

69.     Plaintiff does not anticipate any difficulty in the management of this litigation.

## VII.   CAUSE OF ACTION

70.     Plaintiff reasserts and incorporates herein the allegations contained in the preceding paragraphs.

71.     AHI is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

72.     Awar is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

73.     Each letter is a "communication" as defined by 15 U.S.C. § 1692a(2).

74.     Each letter was mailed in an attempt to collect a "debt" as defined by 15 U.S.C. § 1692a(5).

75.     Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

76.     Defendants use of letters in the form of the Collection Notice, the Third Notice, the Credit Reporting Notice, and the Notice of Credit Impairment violated Plaintiff's rights protected by the FDCPA, including but not limited to the following:

   a.  The right not to be subjected to Defendants' false, deceptive, and misleading representations and means in connection with the collection of the alleged debts as protected by 15 U.S.C. § 1692e;

   b.  The right not to be subjected to Defendants' unfair and unconscionable practices as protected by 15 U.S.C. § 1692f;

   c.  The right to receive clear and accurate information about the name of the creditor to whom the debt is owed as protected by 15 U.S.C. § 1692g(a)(2); and

    d.   The right to a 30-day period within which to dispute the debt following Defendants' initial written communication without the chilling effect of threatened credit reporting which overshadows those dispute rights in violation of 14 U.S.C. § 1692g(b).

77.    As a direct, proximate, and legal cause of these violations, Plaintiff suffered from confusion and emotional distress in the form of helplessness, and her credit reputation was damaged by Defendants' credit reporting which Plaintiff could have avoided had Defendants not misrepresented their credit reporting practices but, instead, accurately disclosed those practices.

78.    Based on any one of those violations, Defendants are liable to Plaintiff for damages, attorney's fees and costs as provided for under 15 U.S.C. § 1692k.

## VIII.  PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Delia Rodriguez demands judgment against Defendants Awar Holding, Inc. and Sam A. Awar, jointly and severally, as follows:

    a.   For certification of this instant matter as a class action, appointing the named Plaintiff as representative of the class, and appointing the attorneys of Kim Law Firm LLC as class counsel;

b. For statutory damages in favor of Plaintiff pursuant to 15 U.S.C. § 1692k(a)(2)(B)(i) or, in the alternative, 15 U.S.C. § 1692k(a)(2)(A);

c. For statutory damages in favor of the Class pursuant to 15 U.S.C. § 1692k(a)(2)(B)(ii);

d. For an appropriate incentive award to Plaintiff for her services as the class representative;

e. For actual damages in favor of Plaintiff and the Class pursuant to 15 U.S.C. § 1692k(a)(1) to the extent the recovery of attorney's fees and costs causes Plaintiff or the Class a negative tax consequence;

f. For attorney's fees, litigation expenses and costs in connection with this action pursuant to 15 U.S.C. § 1692k(a)(3);

g. For pre-judgment and post-judgment interest; and

h. For such other and further relief as the Court deems equitable and just.

## IX.   JURY DEMAND

Plaintiff demands trial by jury as to all claims and defenses.

Dated: March 17, 2022

s/Philip D. Stern
_____
Philip D. Stern
KIM LAW FIRM LLC
Attorneys for Plaintiff

## X.    CERTIFICATION

Pursuant to Local Civil Rule 11.2, I hereby certify to the best of my

knowledge that the matter in controversy is not the subject of any other

action pending in any court or of any pending arbitration or administrative

proceeding.

Dated: March 17, 2022

s/Philip D. Stern
_____
Philip D. Stern
KIM LAW FIRM LLC
Attorneys for Plaintiff