UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DELIA RODRIGUEZ, individually and on behalf of those similarly situated,**<br><br>Plaintiff,<br><br>v.<br><br>**AWAR HOLDINGS, INC. also known as Gem Recovery Systems, Accounts Receivable Management Corp, Accounts Receivable Management Corp (ARMC), and ARMC; SAM A. AWAR; and JOHN DOES 3 TO 10,**<br><br>Defendants. | Civ. No. 18-16251 (KM) (JBC)<br><br>OPINION |

### KEVIN MCNULTY, U.S.D.J.:

This matter comes before the Court on defendants' motions to dismiss the fourth amended class action complaint for lack of standing. (DE 123, 124).[1] The complaint, which was filed by plaintiff Delia Rodriguez on behalf of herself and others similarly situated, alleges that defendant Awar Holdings Inc. ("AHI") sent Rodriguez a number of letters in an attempt to collect a debt she allegedly owed. Rodriguez claims that AHI's communications violated the Fair Debt

---

[1] Certain citations to the record will be abbreviated as follows:

DE = Docket entry in this matter
4AC = Fourth amended class action complaint (DE 92)
Opp. = Rodriguez's memorandum of law in opposition to defendants' motions to dismiss (DE 126)

1

Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692o. For the reasons set forth below, I will **GRANT** the defendants' motions to dismiss.[2]

## I. Background

The facts alleged in the complaint are as follows. Defendant Sam Awar is the sole director of AHI, a New Jersey corporation. (4AC ¶¶5-7.) AHI does business under several alternative names, including Gem Recovery Systems. (*Id.* ¶9.)

AHI, using the name Gem Recovery Systems, sent Rodriguez a total of 85 letters attempting to collect on a debt she allegedly owed. (4AC ¶31.) Each letter identified "MONOC" as the client and contained information about a specific debt. (*Id.* ¶26.) Beyond that, the letters took six different forms, each bearing a unique title: "Collection Notice," "Second Notice," "Third Notice," "Credit Reporting Notice," "Notice of Credit Impairment," and "Pre-Legal Notice." (*Id.* ¶¶20-22.)

Rodriguez opened and read each of the letters within several days after the letter's date. (4AC ¶24.) As she is unfamiliar with an entity named "MONOC," Rodriguez remained uncertain as to whom the alleged debt was owed. (*Id.* ¶27.)

The Collection Notice was the first letter Rodriguez received. (4AC ¶33.) That letter states in part that Rodriguez's account was "delinquent" and that "[o]ur policy is to report delinquent account information to Trans Union and Experian Credit Bureaus, which may impair your credit rating and your ability to obtain credit in the future." (*Id.* ¶36.)

The Third Notice, which was mailed approximately 10-12 weeks after the Collection Notice, provides in part: "Unless acceptable arrangements are made to satisfy this debt, we will report this delinquency to the major credit bureaus, Trans Union and Experian, which may impair your credit rating and your ability to obtain credit in the future." (4AC ¶¶43-44.) As Rodriguez did not

---

[2] Although defendants AHI and Sam Awar filed two separate motions to dismiss, their arguments are the same. I will therefore discuss the motions in tandem.

receive the Third Notice until nearly three months after receiving the Collection Notice, she spent the intervening period believing that AHI had already begun to report her debt or would do so imminently. (*Id.* ¶¶45, 50.)

Approximately 5-6 weeks after mailing the Third Notice, defendants mailed the Credit Reporting Notice, which included a statement that "[c]ontinued non-payment of this account has resulted in our scheduling this debt for reporting to the major credit bureaus; Trans Union and Experian." (4AC ¶46.) Approximately 5-6 weeks after that, defendants mailed the Notice of Credit Impairment, which, among other things, advised Rodriguez that her "account ha[d] been reported to Trans Union and Experian national credit bureaus." (*Id.* ¶48.)

Rodriguez claims that the initial Collection Notice was false and misleading because, as confirmed by the subsequent letters, AHI does not report a delinquent account until several months after mailing a Collection Notice. (4AC ¶¶38-39.) It was also false because AHI does not report delinquent accounts if, for example, the consumer has disputed the debt. (*Id.* ¶42.) According to Rodriguez, the letters violated several provisions of the FDCPA, including those that prohibit misleading communications and require that debt collectors reveal the creditor to whom the debt is owed. (*Id.* ¶75.)

## II.   Procedural history

Rodriguez commenced this action in November 2018. (DE 1.) After some uncertainty as to the identities of the proper defendants, Rodriguez filed a third amended complaint in July 2021. (DE 71.)

The defendants moved to dismiss the third amended complaint for lack of standing pursuant to Fed. R. Civ. P. 12(b)(1). In February 2022, I granted the defendants' motion and dismissed without prejudice to the filing of an amended complaint that remedies the deficiencies identified. (DE 90.) Rodriguez filed a fourth amended complaint, hereinafter referred to as "the complaint" in March 2022. (DE 92.)

### III. Legal standard

Under Fed. R. Civ. P. 12(b)(1), a defendant may move to dismiss on the grounds that the court lacks subject matter jurisdiction over the dispute. A Rule 12(b)(1) motion is the vehicle for a motion to dismiss for lack of standing, because standing is a jurisdictional matter. *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014).

As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing that he or she has standing to sue. *Spokeo Inc. v. Robins*, 578 U.S. 330, 338 (2016). Where a defendant mounts a facial attack on standing, the court considers only the allegations of the complaint and documents referred to therein, construed in the light most favorable to the plaintiff. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). By contrast, where the defendant mounts a factual attack, the court may consider evidence outside the pleadings. *Id.* "[I]f there is a dispute of a material fact, the court must conduct a plenary trial on the contested facts prior to making a jurisdictional determination." *Schuchardt v. President of the United States*, 839 F.3d 336, 343 (3d Cir. 2016).

### IV. Discussion

The dispute between the parties centers on whether Rodriguez suffered a concrete injury, which is an essential element of standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (explaining that standing requires a plaintiff to suffer an "injury in fact," which must be both "concrete" and "particularized"). Two Supreme Court decisions guide this analysis.

In *Spokeo*, the Court explained that a concrete injury is one that is "real" and not "abstract." 578 U.S. at 340. "'Concrete' is not, however, necessarily synonymous with 'tangible.'" *Id*. Many intangible injuries can nevertheless be concrete, despite the fact that they are often harder to observe than tangible injuries, such as physical or monetary harm. *Id*.

In assessing whether an intangible harm constitutes a concrete injury, "both history and the judgment of Congress play important roles." *Spokeo*, 578

4

U.S. at 340. If an alleged intangible harm "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts," it is likely to be sufficient to satisfy concrete injury requirement. *Id.* at 341. "In addition, because Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important." *Id.*

The *Spokeo* Court cautioned, however, that "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 578 U.S. at 341. Crucially, a plaintiff may not "allege a bare procedural violation, divorced from any concrete harm." *Id.*

In *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), the Court applied the holding of *Spokeo* to a particular set of facts. There, the named plaintiff and 8,185 class members alleged that TransUnion, a credit reporting agency, violated the Fair Credit Reporting Act (FCRA) by, among other things, failing to use reasonable procedures to ensure the accuracy of their credit files. *TransUnion*, 141 S.Ct. at 2203. All class members had names that matched the name of an individual on the federal government's list of terrorists, drug traffickers, and other serious criminals. *Id.* at 2208-2209. The internal credit file maintained by TransUnion for each of these individuals thus contained a misleading alert indicating that they were a "potential terrorist." *Id.*

Importantly, however, only 1,853 class members had their credit reports disseminated to third-party businesses during the relevant period. *Id.* at 2208. The Court held that those class members had standing to sue on the reasonable procedures claim because they suffered a "reputational harm associated with the tort of defamation." *Id.* By contrast, the 6,332 class members whose credit reports were not provided to any third parties during the relevant period lacked standing with respect to that claim. *Id.* at 2209. The Court reasoned that there is no historical or common law analogue where the

injury is solely the existence of a misleading alert in a consumer's internal credit file. *Id.* Defamation is not a match because publication is essential to liability in a defamation suit. *Id.* The Court therefore concluded that "[t]he mere presence of an inaccuracy in an internal credit file, if not disclosed to a third party, causes no concrete harm." *Id.* at 2210.

The *TransUnion* decision also clarified that in a suit for damages, the "risk of future harm" does not constitute concrete harm in and of itself. *Id.* at 2210-2211. The Court rejected the argument that the 6,332 class members suffered a concrete injury because the misleading alerts in their credit files exposed them to a material risk that the information would be disseminated to third parties in the future. *Id.* According to the Court, unless those class members demonstrated that they "were independently harmed by their exposure to the risk itself—that is, that they suffered some other injury (such as an emotional injury)," the risk of future harm alone was not a basis for standing. *Id.*

Numerous courts in this district have applied the holding of *Spokeo*, as illustrated by the Court in *TransUnion*, in cases challenging the existence of standing under the FDCPA. *See Perez v. I.C. System, Inc.*, No. CV2114883KMMAH, 2022 WL 17991143, at *5 (D.N.J. Dec. 29, 2022) (collecting cases). The consensus in these post-*TransUnion* FDCPA decisions "is that misleading information in a debt collection letter causes concrete harm sufficient to confer Article III standing only where that information influences a plaintiff's decision-making with respect to the debt." *Id.* I explained in a recent decision:

> [T]here is no historical or common law analogue where a plaintiff merely alleges that he or she received false or misleading information from a debt collector. To be sure, the communication of false information with the intent to induce someone to part with money bears a resemblance to common law fraud. *See Lahu* [*v. I.C. Sys., Inc.*, No. CV 20-6732, 2022 WL 6743177, at *3 (D.N.J. Oct. 11, 2022)]. But a critical element of a fraud claim, as many courts reviewing FDCPA claims have emphasized, is "some form of detrimental reliance on the representations made by the defendant." *Id. See, e.g., Rabinowitz* [*v. Alltran Fin. LP*, No. CV 21-12756,

> 2022 WL 16362460, at *9 (D.N.J. Oct. 25, 2022)]. A plaintiff who fails to allege any reliance on a false or misleading statement made in violation of the FDCPA stands on the same footing as a plaintiff who fails to allege third-party dissemination of an internal credit file maintained in violation of the FCRA.

*Perez*, *supra*.

Accordingly, "to satisfy the concreteness requirement, a plaintiff must allege some 'downstream consequences' or 'adverse effects' from receiving false or misleading information in violation of the FDCPA." *Perez*, 2022 WL 17991143, at *6. "Merely alleging a statutory violation is insufficient." *Id.* [3]

Turning to the matter at hand, I conclude that the complaint fails to allege that Rodriguez suffered a concrete injury as a result of receiving false or misleading information in the initial Collection Notice.[4] According to the complaint, Rodriguez "experienced helplessness" upon receiving the Collection Notice because she lacked the ability to pay the debt and "believed that Defendants were and would continue to provide negative information about her to credit reporting agencies." (4AC ¶41.) Although the Third Circuit has yet to consider the issue, both the Sixth and Seventh Circuits have held that experiencing a psychological state such as worry, helplessness, or confusion is not a concrete injury sufficient to confer Article III standing. *See Pierre v. Midland Credit Mgmt., Inc.,* 29 F.4th 934, 939 (7th Cir. 2022), *cert. denied*, 143 S. Ct. 775 (2023); *Ward v. Nat'l Patient Acct. Servs. Sols., Inc.*, 9 F.4th 357, 363 (6th Cir. 2021) ("[C]onfusion alone is not a concrete injury for Article III purposes.").

---

[3]    Rodriguez argues that the plethora of post-*TransUnion* decisions issued by courts in this district and elsewhere have incorrectly applied the *TransUnion* holding. According to Rodriguez, a violation of the FDCPA itself amounts to a concrete injury sufficient to confer Article III standing. (Opp. 8-19.) I find that reasoning inconsistent with *Spokeo* and *TransUnion* itself.

[4]    Although the defendants have mounted a factual attack on standing, I do not find it necessary to examine the evidence they have produced, as the complaint fails to plead the requisite jurisdictional facts.

Rodriguez comes closer to alleging a concrete harm when she states that "her credit reputation was damaged by Defendants' credit reporting which [she] could have avoided had Defendants not misrepresented their credit reporting practices but, instead, accurately disclosed those practices." (4AC ¶77.) As this Court has previously recognized, damage to one's credit score can cause concrete harm to a consumer's economic condition. *See Boone v. T-Mobile USA Inc.*, No. CV 17-378-KM-MAH, 2018 WL 588927, at *8–9 (D.N.J. Jan. 29, 2018). Among other things, "[h]arm to one's credit score might make it more difficult or more expensive to obtain credit cards, auto loans, and mortgages." *Id.*

Here, however, the complaint fails to sufficiently connect any damage to Rodriguez's credit score to the alleged misrepresentations in the Collection Notice. According to the complaint, "[b]y misrepresenting in the Collection Notice that Defendants were currently or imminently reporting the debt to credit reporting agencies and withholding that Defendants would never report the debt if Plaintiff exercised her right to dispute the debt, Plaintiff was unaware that she could have prevented Defendants' from making the negative credit reports that they eventually made." (4AC ¶51.) Significantly, however, nowhere in the complaint is the allegation that Rodriguez had a basis to dispute the debt or *would have* exercised her right to dispute the debt had she been fully informed of AHI's policy. In other words, there is no allegation that this lack of knowledge actually impacted Rodriguez's decision-making with respect to the debt. *See Perez*, 2022 WL 17991143, at *5.

In *Chisom v. Afni, Inc.*, the plaintiff alleged that, had she not been confused by the debt collection letter she received, "she would have opted to dispute or verify" the debt. No. 20-cv-06565, 2021 WL 4355367, at *2 (Sept. 24, 2021). The plaintiff did not believe that she owed the debt at issue, but because of her confusion, she did nothing. *Id.* Judge Blakey of the Northern District of Illinois concluded that the plaintiff had standing to pursue her FDCPA claim because she had pled that her confusion led to inaction; it

8

caused her to forgo her statutory rights to dispute or seek verification of the debt under the FDCPA. *Id.* at *5.

Here, there is no similar allegation that Rodriguez would have opted to dispute the debt had AHI accurately disclosed its credit reporting practices, and the Court cannot assume that she would have done so. For one thing, there is no allegation that Rodriguez did not believe she owed the debt in question. *Cf. Chisom*, 2021 WL 4355367, at *2. Although a dishonest person might dispute a legitimate debt in order to prevent a debt collector from reporting it, an honest person might choose otherwise. The facts alleged are thus inadequate to demonstrate that Rodriguez suffered a concrete injury as a result of receiving misleading information in violation of the FDCPA.

I analyze separately the issue of whether Rodriguez suffered a concrete harm because the debt collection letters did not clearly state the name of the creditor to whom the debt is owed. The FDCPA requires a debt collector to provide this information to a consumer either in an initial communication regarding the debt or within five days after any such communication. 15 U.S.C. § 1692g(a)(2). The Third Circuit has recognized that a plaintiff may have standing to sue where she alleges that she failed to receive information to which she is statutorily entitled. *Deutsch v. D&A Servs. LLC*, No. 22-1042, 2023 WL 2987568, at *3 (3d Cir. Apr. 18, 2023). Specifically, "[a] plaintiff has alleged an informational injury sufficient to give rise to standing if she alleges '(1) the omission of information to which [she] claim[s] entitlement, (2) adverse effects that flow from the omission, and (3) the requisite nexus to the concrete interest Congress intended to protect' when it created a legal entitlement to the information at issue." *Deutsch,* 2023 WL 2987568, at *3 (quoting *Kelly v. RealPage Inc.*, 47 F.4th 202, 211 (3d Cir. 2022)).

Assuming *arguendo* that the complaint satisfies the first prong of this test, it falls short on the second; it does not allege that AHI's failure to clearly convey the name of the creditor to whom Rodriguez owed the debt resulted in any "adverse effects." The complaint does not state, for instance, that

9

Rodriguez opted not to pay the debt because she did not know to whom it was owed. To the contrary, the complaint states that Rodriguez lacked the ability to pay the debt (4AC ¶41), suggesting that she would not have paid it irrespective of the identity of the creditor. Rodriguez has therefore failed to allege that she suffered an informational injury for purposes of establishing standing.

Article III requires that the party purporting to represent a class must be able to prove actual injury to herself. *O'shea v. Littleton,* 414 U.S. 488, 494 (1974). If none of the named plaintiffs purporting to represent a class establishes standing, none may seek relief on behalf of herself or any other member of the class. *Id.* Having found that Rodriguez lacks standing, I will dismiss both her personal and class claims.

The defendants have moved for dismissal of the complaint with prejudice. But where a court lacks subject matter jurisdiction, it may not decide the merits of the action. *Ellison v. Am. Bd. of Orthopaedic Surgery*, 11 F.4th 200, 210 (3d Cir. 2021). As a result, "dismissal for lack of standing is generally without prejudice." *Id.* I will not depart from that general rule here.

### V.    Conclusion

For the reasons set forth above, the defendants' motions to dismiss the fourth amended complaint for lack of standing (DE 123, 124) are **GRANTED**. Rodriguez may file a motion to amend the complaint within 45 days after the entry of this opinion and the accompanying order.

Dated: July 6, 2023

/s/ Kevin McNulty

---

**Kevin McNulty**
**United States District Judge**